**UNITED STATES of America,**
**Plaintiff,**

v.

**RENAULT, INC., et al., Defendants.**

United States District Court
S. D. New York.

Oct. 28, 1960.

---

Richard B. O'Donnell, New York City, for Dept. of Justice.

Weil, Gotchal & Manges, New York City, for defendant Eastern Auto Distributors, Inc.

Hays, Busby & Rivkin, New York City, for defendants Renault, Inc. and Factory Distributor for Renault, Inc.

Schwartz, Troiano & Bernard, New York City, for defendant Auto Imports, Ltd.

Coudert Brothers, New York City, for defendant Peugeot, Inc.

DIMOCK, District Judge.

In this civil antitrust action, plaintiff has moved for orders sustaining its objections to defendants' interrogatories to the extent that they have not been answered, and defendants have moved for orders requiring responsive answers to most of those interrogatories that have been answered.

Plaintiff's complaint charges defendants with unreasonably restraining trade and commerce in violation of section 1 of the Sherman Act, 26 Stat. 209, 15 U.S.C.

§ 1, and section 3 of the Clayton Act, 38 Stat. 731, 15 U.S.C. § 14.

Defendants Renault, Inc. and Peugeot, Inc. import automobiles and parts therefor manufactured in France and sell these products to distributors for resale to dealers who sell to the public. Sixteen distributors are joined as defendants, while distributors not made defendants and retail dealers of the products are named as co-conspirators. The complaint charges that the conspiracy in violation of the Sherman Act began in 1955, continued until the filing of the complaint (on December 28, 1959), and embraced within its terms price-fixing, allocation of territories, exclusive dealing and "anti-bootlegging". The Clayton Act violation, alleged to have commenced as far back as 1956 for some of defendants, is based on charges of exclusive dealing. Defendants' answers to the complaint amounted to general denials.

The two sets of interrogatories in issue were filed, respectively, by Renault, Inc. and Renault Corp. (which I shall refer to as "Renault") and by fourteen of the distributor defendants (whom I shall call "distributors"). Since plaintiff makes the same objections to those interrogatories in both sets which it has not answered, I shall deal simultaneously with the two sets of interrogatories and the objections thereto.

Plaintiff urges at the outset that the unanswered interrogatories be disapproved in toto because of their burdensome, oppressive and wholly unwarranted scope. To buttress its argument, plaintiff asserts that other pretrial procedures will render unnecessary these "premature" interrogatories. No convincing case has been established for rejection in whole of the interrogatories. The broad and liberal treatment afforded rules for discovery, see Hickman v. Taylor, 329 U.S. 495, 506, 67 S.Ct. 385, 91 L. Ed. 451, will necessarily result in inconvenience and burden to a party to whom interrogatories are propounded, Leonia Amusement Corp. v. Loew's Incorp., D.C. S.D.N.Y., 18 F.R.D. 503, 505. It is obvious that any interrogatories in the present case which were framed with a view to adequate preparation of a defense would entail burden on plaintiff, for the complaint gives notice only of general antitrust violations by hundreds of co-conspirators ranging, as far as most of the charges are concerned, from 1955 until December 28, 1959. While it is true that plaintiff has not yet obtained any answers to interrogatories submitted to defendants, in answering defendants' interrogatories plaintiff has the benefit of its extensive investigation of the business practices of defendants and their alleged co-conspirators. Further, plaintiff may supplement or amend its answers in the light of any new information obtained after its answers are filed. Thus there is no reason to require defendants to rely mainly on pretrial devices available at a later stage of the proceedings. Plaintiff's motion is denied insofar as it seeks rejection in toto of the interrogatories.

Turning next to plaintiff's specific objections to the unanswered interrogatories, I believe it will prove most convenient to sort the interrogatories to which these objections are addressed into four categories, designated as follows: (1) Comprehensive requests for evidence supporting plaintiff's charges; (2) Requests for extensive data not directly related to the proof which plaintiff intends to present but of possible aid in the preparation of a defense; (3) Requests for disclosure of plaintiff's witnesses and of the particular facts which each witness will be used to prove; and (4) Requests for opinions, contentions and conclusions, legal or otherwise.

1. *Comprehensive requests for evidence supporting plaintiff's charges.* The interrogatories in this category seek to elicit the sum total of plaintiff's evidence to be presented at trial. Defend-

ants inquire as to "each and every" act, event, circumstance, communication and document which will be utilized to support each allegation in the complaint averring a violation. While these exhaustive interrogatories would not require plaintiff to perform labor useless to it, since it will doubtless need the information to prove its charges, the rule clearly is that a party may not be required by interrogatories to submit every item of evidence he expects to produce on trial of the case. E. g., Ritepoint Co. v. Secretary Pen Co., Inc., D.C.N.J., 94 F.Supp. 457; United States v. Owens Illinois Glass Co., D.C.N.D.Ohio, 25 Fed. Rules Serv. 33.1, Case 1; United States v. General Motors Corp., D.C.N.D.Ill., 2 F.R.D. 528; 4 Moore, Federal Practice par. 26,19, at page 1081.

When properly used, disclosure is a valuable aid in narrowing and clarifying issues as well as in discovering evidence and leads to evidence, but to permit a type of disclosure which elicits every minute detail of evidence would result in extreme hardship and confusion. This would be particularly true in antitrust actions, where the issues subject to proof are often broad and manifold. The proceedings would be long delayed pending the arduous preparation of answers which would make up a complete trial record before the actual trial had even begun. The interrogated party would work at great peril in compiling his huge volume of answers, for omission of any item of evidence, through innocent oversight or otherwise, would subject him to the possible risk of exclusion of the omitted evidence at trial. Listing certain evidence in the answers as bearing only on one allegation might preclude its introduction at trial in connection with other allegations. Even after furnishing answers, the interrogated party would need to be continually on guard to supplement his answers with every shred of new evidence garnered. Obviously, then, discovery must be kept within bounds to assure that interrogating parties do not employ practices which would defeat the public interest in the orderly and expeditious administration of justice. Plaintiff's objections to the interrogatories listed below are sustained.[1]

Objection is overruled, however, as to those interrogatories which require plaintiff to identify and indicate the present whereabouts of all documents it intends to rely upon to prove the allegations in the complaint.[2] Answers to these interrogatories should serve a valuable function in narrowing the issues and in enabling defendants to prepare their case, particularly since plaintiff states that the prosecution will rely in large part on documentary evidence.

2. *Requests for extensive data not directly related to the proof which plaintiff intends to present, but of possible aid in the preparation of a defense.* Interrogatories in this second category seek mainly to develop leads to evidence in defense, although they might also result in disclosure of evidence plaintiff may adduce at trial.

Requests are made for lists of all documents bearing in any way on the business practices under attack. These interrogatories calling for extensive and detailed compilations, even though answers might not restrict the Government in its proof as would answers to the interrogatories listed in footnote 1, shift to plaintiff the burden of preparing the defense's case. Since most of the infor-

---

1. Renault interrogatories numbers:
   2(a)–(e); 3(a)–(d); 8(a)–(d); 9(a)–(d); 12; 13; 27(a)–(d); 30(a)–(d); 34(a)–(d); 38(a)–(d); 42(a)–(d); 46(a)–(d); 51(a)–(d); 56(a)–(d); 61(a)–(d); 66(a)–(d); 71(a)–(d); 76(a)–(d); 79(a)–(d); 95(a)–(d).

2. Renault interrogatories numbers:
   5, 11, 29, 32, 36, 40, 44, 48, 53, 58, 63, 68, 72, 78, 81, 97.
   Distributors' interrogatories numbers:
   3(d), 9(b), 10(b), 22(f), 23(f), 24(f), 25(f), 28(a), 29(f), 30(f), 33(a), 36(a), 41(a), 42(b), 43(b).

mation requested is readily available to defendants from their own files, plaintiff's objections to the interrogatories will be sustained.[3]  See Konczakowski v. Paramount Pictures, Inc., D.C.S.D.N.Y., 20 F.R.D. 588; United Cigar-Whelan Stores Corp. v. Philip Morris, Inc., D.C. S.D.N.Y., 21 F.R.D. 107; Caldwell-Clements, Inc. v. McGraw-Hill Publishing Co., D.C.S.D.N.Y., 12 F.R.D. 531, 544.

■  Plaintiff is also requested to list every overt act by a defendant or co-conspirator which might tend either to substantiate or to disprove the existence of a conspiracy violative of the Sherman Act, or the existence of exclusive dealership arrangements violative of the Clayton Act.[4]  In connection with its listing of these overt acts, plaintiff is asked to name dates and actors.  Plaintiff will not be compelled for defendants' benefit to seek evidence which might tend to disprove the alleged violations.  Evidence that alleged co-conspirators on certain occasions were not coerced to adhere to the terms of the asserted conspiracy in violation of the Sherman Act would be of questionable relevance in any event. United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 405, certiorari denied 314 U.S. 618, 62 S.Ct. 105, 86 L.Ed. 497, rehearing denied 314 U.S. 710, 62 S.Ct. 178, 86 L.Ed. 566.  Plaintiff argues that neither should it be required to furnish information of overt acts in further-ance of the conspiracy since it need not offer proof of overt acts at trial in order to prevail.  United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 224–225, 60 S.Ct. 811, 84 L.Ed. 1129; United States v. General Motors Corp., 7 Cir., 121 F.2d 376, 405, certiorari denied 314 U.S. 618, 62 S.Ct. 105, rehearing denied 314 U.S. 710, 62 S.Ct. 178. Whether or not this is true plaintiff has not stated that it will not offer such proof.

■  Defendants' interrogatories in requiring plaintiff to list overt acts do not limit the category to those on which it will rely upon the trial.  To avoid useless burden to plaintiff, it need not furnish information as to the complete list of overt acts tending to substantiate the alleged Sherman and Clayton Act violations but plaintiff will be precluded from offering evidence with respect to any overt act not cited.[5]

Renault's interrogatories call for names and addresses of persons who have knowledge of relevant facts.  These names and addresses are to be listed separately in relation to each act, event or communication of which the persons have knowledge.  Where Renault's requests for detailed statement of plaintiff's evidence have been denied, the accompanying requests for names and addresses of persons having knowledge of the details need not be furnished,[6] since such lists would be almost unintelligible

---

3.  Renault interrogatories numbers:
    2(f); 3(f); 8(f); 9(f); 27(f); 30 (f); 34(f); 38(f); 42(f); 46(f); 51 (f); 56(f); 61(f); 66(f); 71(f); 76 (f); 79(f); 85(f); 95(f).
    Distributors' interrogatories numbers: 9(a); 10(a); 43(a).

4.  Renault's interrogatory number 87 may serve as an example:
    "State every instance by any defendant or alleged co-conspirator of a sale of one or more foreign manufactured automobiles or parts competitive with Renault and/or Peugeot products, and specify in each instance whether and in what manner, if at all, any defendant or any alleged co-conspirator objected to such sale or took other action opposed thereto or in retaliation therefor."

5.  Interrogatories ruled upon in this and the preceding paragraph are:
    Renault interrogatories numbers: 2(h); 8(h); 49; 50; 54(c); 55; 59(c); 60; 64; 65; 69; 70; 74; 75; 85(h); 86; 87.
    Distributors' interrogatories numbers: 22(e); 23(e); 24(e); 25(e); 26; 27; 29(d) (e); 30(d) (e); 31; 32; 34; 35; 37; 38; 39; 40; 44.

6.  Renault interrogatories numbers:
    2(g); 3(e); 8(g); 9(e); 27(e); 30 (e); 34(e); 38(e); 42(e); 46(e); 51 (e); 56(e); 61(e); 66(e); 71(e); 76 (e); 79(e); 95(e).

and their negligible value would be far outweighed by the burden of preparation cast upon plaintiff. Where, however, objection has been overruled to interrogatories requesting comprehensive evidentiary data, accompanying lists will be furnished of names and addresses of persons having knowledge of the facts.[7]

■ 3. *Requests for disclosure of plaintiff's witnesses, and of what witnesses will be used to prove particular facts.* Defendants seek a list of plaintiff's witnesses, broken down according to which allegations in the complaint each witness will testify to, with a further statement of the facts which plaintiff intends to prove in whole or in part by each such witness. The request amounts to a subterfuge to avoid a showing of justification on a motion to produce written statements of witnesses or memoranda of interviews of witnesses, see 4 Moore, Federal Practice § 26.19, at page 1081. Objection to these interrogatories [8] will be sustained for another reason as well. Plaintiff would be hampered severely if, on pain of possibly being held to its statements at trial, it were required to state beforehand what it thought its witnesses would testify to.

■ 4. *Requests for opinions, contentions and conclusions, legal or otherwise.* Plaintiff argues that all interrogatories which call for opinions, contentions or conclusions are improper. It is true that there is considerable authority supporting plaintiff's view. 4 Moore, Federal Practice § 33.17. Rather

than impose an inflexible rule, however, which would require laborious search for the intricate and elusive (and perhaps illusory) dividing markers separating fact, opinion, contention and conclusion, it seems preferable to allow those interrogatories which might possibly call for opinion, conclusion or contention, if, on the balance of convenience, answers to them would serve any substantial purpose, either in leading to evidence or in narrowing issues. See Territory of Alaska v. Arctic Maid, D.C.Alaska, 135 F. Supp. 164; American Oil Co. v. Pennsylvania Petroleum Products Co., D.C. R.I., 23 F.R.D. 680; 4 Moore, Federal Practice § 33.17, at p. 2306. See also, United States v. Continental Can Co., D.C.S.D.N.Y., 22 F.R.D. 241.

■ Some of defendants' interrogatories seek to determine how plaintiff will delineate the relevant markets and lines of commerce. These interrogatories may narrow the issues and are proper. See United States v. Continental Can Co., D.C.S.D.N.Y., 22 F.R.D. 241, 247. On the other hand, interrogatories calling on plaintiff to specify the volume, value and make of competitive products which would have existed but for the alleged exclusive dealing arrangements concern subjects not susceptible of detailed proof and could be answered only by speculation. The objections to such interrogatories are sustained.[9] Objections to interrogatories asking for an extremely comprehensive outline of the legal theories which plaintiff will employ are also sustained,[10] for they

---

7. Renault interrogatory number 85(g).

8. Renault interrogatories numbers:
   4; 10; 28; 31; 35; 39; 43; 47; 52; 57; 62; 67; 72; 77; 80; 96.
   Distributors' interrogatories numbers:
   3(e); 9(c); 10(c); 22(g); 23(g); 24(g); 25(g); 28(b); 29(g); 30(g); 33(b); 36(b); 41(b); 42(c); 43(c).

9. Renault interrogatories numbers 88; 90.

10. Renault interrogatory number 93;
    So much of Distributors' interrogatory number 42(a) as seeks an explanation

of in what respects contracts, agreements and understandings were unlawful; provided that in answering the remainder of 42(a) plaintiff may either itemize all the information requested, or may designate those documents in the possession of the interrogating defendants or in the possession of plaintiff and available for inspection in which the information is to be found. If plaintiff designates documents in the possession of interrogating defendants, it will also name the possessor of each such document cited.
    Distributors' interrogatory 47.

would impose the burden on plaintiff of submitting a voluminous brief on the law at this early stage. Further disclosure of legal arguments will undoubtedly follow during the course of pre-trial proceedings. See United States v. Maryland & Virginia Milk Producers' Association, D.C.D.C., 22 F.R.D. 300.

Distributors' interrogatory 48 asks many details which would be of no use to defendants. It will be approved only to the following extent:

"48. State the name and address of each person, firm or corporation which manufactured or imported into the United States new automobiles or parts therefor who has experienced difficulties in finding a sufficient number of qualified distributors and/or dealers for said automobiles or parts in the United States during the period covered by the complaint which difficulties were caused in whole or in part by the alleged action of defendants complained of in the complaint; describe such difficulties and state how said difficulties were so caused."

Plaintiff need answer the thus amended interrogatory 48 only to the extent that evidence within its scope will be offered but plaintiff will be precluded from offering any evidence within the scope of the interrogatory unless supplied in the answer thereto.

All objections to interrogatories not hereinabove specifically passed upon are overruled.

In Renault interrogatory 2(h), the words "such communication" will be deleted and the following words substituted: "direct or indirect communications between RSB and any defendant or alleged co-conspirator, on any occasion since January 1, 1955, concerning any of the matters averred in subparagraphs (a)–(j) of paragraph 20 of the complaint".

In Renault interrogatory 8(h), the words "such communication" will be deleted and the following words substituted: "direct or indirect communications between alleged co-conspirators, whether or not defendants, concerning any of the matters averred in subparagraphs (a)–(j) of paragraph 20 of the complaint".

Turning to defendants' motions for more responsive answers to most of the interrogatories already answered:

Plaintiff is directed to serve a more specific answer to Renault interrogatory 6 and to distributors' interroga-1, which seek identification of all co-conspirators who were not made defendants. Plaintiff will either supply specific names and addresses or will designate and identify those documents in the possession of the interrogating defendants or in the possession of plaintiff and available for inspection in which such names and addresses are to be found. If plaintiff designates documents in the possession of interrogating defendants, it will also name the possessor of each such document cited. This method is to be adopted with respect to the dates requested in distributors' interrogatory 3 (c), but this interrogatory shall be construed only to request the dates during which defendants and co-conspirators not made defendants were members of the overall conspiracy charged.

Defendants' objections are overruled as to the answers to Renault interrogatory 7 and distributors' interrogatory 2 which would require a breakdown of participants in each of many branches of the conspiracy. Under the law of conspiracy each conspirator participates in every act.

Plaintiff's complaint alleged that 47,-500 Renault automobiles, 4,500 Peugeot automobiles and 365,000 foreign manufactured automobiles were sold in the United States in 1958. Renault interrogatories 14–18 inclusive asked where these figures were obtained and for an itemization of makes and models and asked what plaintiff would claim were the

corresponding figures for each year covered by the complaint. Plaintiff answered that the figures came from the Automobile News and that it had no further information as to the actual facts or what it would claim.

The interrogatories must be answered except with respect to Renault and Peugeot sales. Those figures must be in possession of Renault and are facts which from a practical standpoint cannot be the subject of controversy.

Objections to answers to Renault interrogatories 19 and 20 are rejected. The answers appear responsive on their face and lack of detailed objection reinforces this conclusion.

■ Plaintiff will file more responsive answers to Renault interrogatories 33, 37, 41 and 45 and to distributors' interrogatories 22(a)–(d), 23(a)–(d), 24 (a)–(d) and 25(a)–(d), all of which seek information concerning the particular prices of Renault and Peugeot products that were fixed and the manner, period and area in which they were fixed. Plaintiff will either detail item by item all of the information requested, or will designate and identify those documents such as price lists in the possession of the interrogating defendants or in the possession of plaintiff and available for inspection in which the information is to be found. If plaintiff designates documents in the possession of interrogating defendants, it will also name the possessor of each such document cited.

■ Plaintiff will file more responsive answers to Renault interrogatories 54(a) (b) and 59(a) (b), and to distributors' interrogatories 29(a)–(c) and 30 (a)–(c), all of which request identification of the territories allegedly assigned to distributors and dealers, and the periods and manner of the assignments. The answers will either detail item by item the information sought or will designate and identify those documents such as franchises in the possession of the interrogating defendants or in the possession of plaintiff and available for inspection in which the information is to be found. If plaintiff designates documents in the possession of interrogating defendants, it will also name the possessor of each such document cited.

More responsive answers will be filed to Renault interrogatories 82, 83 and 84 and to distributors' interrogatories 4, 6 and 8, all of which request identification of products claimed by plaintiff to be competitive with Renault and Peugeot products during the years covered by the complaint. Plaintiff's answers to Renault's interrogatory 84 and distributors' interrogatory 8, however, need only contain a representative sampling rather than a complete list of parts competitive with Renault and Peugeot parts.

Plaintiff will file more responsive answers to Renault interrogatory 86 to the extent previously directed in this memorandum at note 5.

■ Renault interrogatories 99, 100 and 101 and distributors' interrogatory 49 request all prices of Renault and Peugeot products which have been fixed at arbitrary and non-competitive levels. Plaintiff's answers stating, in effect, that all prices which were fixed were at arbitrary and non-competitive levels give the information required and give it in a form just as useful as if every price were itemized.

Plaintiff will file more responsive answers to Renault interrogatories 102 and 103 but plaintiff need not furnish information as to the complete list of overt acts, provided, however, that plaintiff will be precluded from offering evidence with respect to any overt act not cited.

■ There is one qualification to be applied to each of the foregoing directions to which it is appropriate. The Government need not disclose the identity of persons who have furnished information of violations of law to officers charged with enforcement of that law, Roviaro v. United States, 353 U.S. 53, 77

S.Ct. 623, 1 L.Ed.2d 639, except in cases where the Government will call such persons as witnesses. United States v. Shubert, D.C.S.D.N.Y., 11 F.R.D. 528; United States v. Jerrold Electronics Corp., D.C.E.D.Pa., 168 F.Supp. 146. No showing has been made in this case which would require rejection of the cloak of anonymity under the principles stated in the Roviaro opinion, 353 U.S. at pages 60–62, 77 S.Ct. at pages 627–629.

The answers will designate persons whose anonymity is to be preserved under the foregoing ruling by a statement to that effect and non-duplicating fictitious names such as John Doe and Richard Roe.

Plaintiff shall have the right to amend any and all of the answers heretofore or hereafter served by plaintiff to the interrogatories heretofore served including the more specific answers directed to be served by this order subject to the power of the court to strike out any such amendment on the ground of untimeliness in that plaintiff has not exercised due diligence or defendants have been unfairly prejudiced.